# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| Tut Chany,<br><br>                Plaintiff,<br><br>      v.<br><br>NORTH STAR FISHING COMPANY LLC; ARICA VESSEL, LLC; AND GLACIER FISH COMPANY, LLC.; *In Personam*, and The F/T ARICA, Official Number 550139, her engines, tackle, gear, apparel, and equipment, *In Rem*,<br><br>                Defendants. | In Admiralty And At Law<br><br>No.<br><br>VERIFIED COMPLAINT *IN REM* and *IN PERSONAM* for PERSONAL INJURY<br><br>JURY DEMAND |

## I. JURISDICTION

1.1     This is an admiralty or maritime claim within the meaning of FED. R. CIV. P. 9(h).

1.2     Jurisdiction arises under 28 U.S.C. § 1333 and 28 U.S.C. § 1331. Plaintiff's claim under 46 U.S.C. § 30104 is brought "at law" and trial by jury is demanded.

1.3     Plaintiff, Tut Chany, is a seaman. He is entitled under the provisions of 28 U.S.C. § 1916 to bring this complaint without prepayment of costs.

SEAMAN'S COMPLAINT FOR DAMAGES - Page 1
(Tut Chany v. North Star Fishing Co., LLC et al.)

Anthony J. Ginster
Attorney At Law
225 – 106th Avenue N.E.
Bellevue, WA 98004
(425) 462-8240

## II.  PARTIES

2.1     The *in personam* defendants (hereinafter "defendants") are closely held and affiliated Washington corporations or entities.  Defendants' principal place of doing business is within King County, Washington.  Defendant North Star Fishing Company LLC. (formerly known as Iquique US, LLC) was the named employer of plaintiff.  Defendant Arica Vessel, LLC is the titled owner of the vessel F/T ARICA on which plaintiff served and was injured.  Glacier Fish Company, LLC maintains an ownership share and management functions over North Star Fishing Company LLC and/or the F/T ARICA.

2.2     At all material times defendants owned and/or operated the *in rem* defendant F/T ARICA.

2.3     Plaintiff is a resident of the State of Washington and was at all material times employed by the defendants as a seaman in the service of the vessel.

## III.  FACTS

3.1     In or about 2006 plaintiff began working for defendants as a processor.  Over the years plaintiff worked his way up "Combi" that combines a mix of deck and factory duties and then to the title of deck hand. At all material times plaintiff served aboard the F/T ARICA and as a regular member of the vessel's crew.

3.2     On or about October 26, 2022 and at all material times, the vessel was in navigable waters of the United States, and the plaintiff was in the course of his employment as a seaman in the service of the vessel.

3.3     The F/T ARICA (hereinafter "the vessel") is a factory trawler that both catches and processes fish.  The vessel produces a final product of frozen cases of processed fish which it stores in its freezer hold(s).

SEAMAN'S COMPLAINT FOR DAMAGES - Page 2
(Tut Chany v. North Star Fishing Co., LLC et al.)

Anthony J. Ginster
Attorney At Law
225 – 106th Avenue N.E.
Bellevue, WA 98004
(425) 462-8240

3.4 The vessel operates nearly year-round 24/7. Defendants worked the vessel's deck and processing crews 16 hours days seven days a week stretching for months on end without days off.

3.5 Defendants divide the vessel's fishing operations into separate periods or voyages known as "trips." A typical trip commences when the vessel leaves port and lasts as long as it takes to fill the vessel's freezer holds, return to port and complete offload of the product. A trip typically takes 7-10 days.

3.6 As a general description of the vessel's fishing operations, the vessel catches fish by dragging a long net off its stern. When the net is full of fish, the vessel hauls it up onto the vessel's long open back deck (aka the "trawl deck"). More specifically, the full net is hauled up the vessel's stern ramp into an alley that runs lengthwise along the centerline of the back deck and is known as the "trawl alley."

3.7 The trawl alley on the ARICA was defined by low walls, *estimated* at 2.5 feet high, which ran the length of the back deck on port and starboard sides of the trawl alley. These confines of trawl alley encumbered quick exit from this workspace.

3.8 A net dragged by the vessel acts and is shaped somewhat like a funnel. The forward opening of the net has a wide mouth to maximize the area of fish capture. Fish entering the mouth of the net are funneled back into the net and captured in its long narrow tail end known as the "cod-end."

3.9 As a general description of the vessel's fishing operations, after a net is full, the vessel hauls it into the trawl alley by winching it on to a net reel located at the forward end of the trawl alley.

3.10 As a general description of the vessel's fishing operations, after a full net is brought into the trawl alley, the deck crew opens the its cod-end and empties or pushes the voluminous catch down a hatch which leads to the vessel's below-decks processing factory.

SEAMAN'S COMPLAINT FOR DAMAGES - Page 3
(Tut Chany v. North Star Fishing Co., LLC et al.)

Anthony J. Ginster
Attorney At Law
225 – 106th Avenue N.E.
Bellevue, WA 98004
(425) 462-8240

3.11    At all material times, the vessel's 6 person deck crew was divided into 3 16 hour 2-person shifts.  Plaintiff's shift was 4 PM to 8 AM the following day.

3.12    At all material times, the vessel lacked a sufficiently manned processing crew to timely process the vessel's catches without assistance from the deck crew.  As a result, plaintiff was assigned to work in the factory at the end of emptying the net after most or all net haul-backs.  On information and belief, the same or similar division of duties between the deck and the processing factory applied to other or all members of the vessel's 6-person deck crew.

3.13    On or about the very late night of October 25, 2022, or the very wee morning hours of October 26th, the vessel completed its last haul of the trip.  Thereafter, plaintiff was transferred from the deck to the factory to assist in processing this final catch of the trip.  Plaintiff completed his shift in the factory at 8 AM on October 26th.

3.14    After concluding the trip's above-referenced last haul-back and emptying of the net's cod-end the vessel did not entirely wind the cod-end onto the net reel.  This left several feet the cod-end lying unsecured on the trawl alley deck.

3.15    After completion of the above-referenced last haul-back, the vessel began streaming through the Bering Sea for Dutch Harbor Alaska to off-load its product.  The vessel continued its processing of its last catch while underway to Dutch Harbor.

3.16    While underway to Dutch Harbor, the vessel was in or encountered very rough seas, but not unexpectable Bering Sea conditions.  The Captain of the vessel has reported having a 16' to 18' sea/swell and that he had altered course and speed enroute to aid in safe operation of production in the factory and on the vessel.

SEAMAN'S COMPLAINT FOR DAMAGES - Page 4
(Tut Chany v. North Star Fishing Co., LLC et al.)

Anthony J. Ginster
Attorney At Law
225 – 106th Avenue N.E.
Bellevue, WA 98004
(425) 462-8240

3.17 At the start of plaintiff's shift at 4 PM on October 26, 2022 the seas remained very rough and processing of the last catch of the trip continued. The vessel initially assigned plaintiff and the other deckhand who had just come on shift to processing tasks in the vessel's factory located inside the vessel. After approximately ½ hour, the deck boss ordered both men on to the trawl deck to clean up trashed fish which had accumulated there due to spilling or escaping from the trawl net during the trip.

3.18 As plaintiff worked picking up trashed fish in forward end of the trawl alley the unsecured cod-end that laid on the deck shifted and slid due to a roll of the vessel in the rough seas. Plaintiff did his best to get out of the confined space of the trawl alley to evade the sliding net.

3.19 Unfortunately, as he stepped over the trawl alley's starboard wall and down to the outer portion of the trawl deck with his right leg, the heavy net slammed into his left leg that was still inside the trawl alley. This massive blow of the net pinned his lower left leg against the inside of the trawl alley's wall snapping both his tibia and fibula in two. Plaintiff then fell to the main deck incurring further damage to his left knee and leg.

3.20 Plaintiff remained on the vessel until it made port in Dutch Harbor Alaska on October 27, 2023. He was taken ashore for medical care at a local Dutch Harbor Clinic and from there flown to Anchorage for emergent surgery, including insertion of a metal rod spanning the length of his lower leg, and 9 days inpatient hospitalization. He has recently undergone a second revision surgery and inpatient hospitalization in the Seattle area and his active medical care continues.

//

//

//

//

SEAMAN'S COMPLAINT FOR DAMAGES - Page 5
(Tut Chany v. North Star Fishing Co., LLC et al.)

Anthony J. Ginster
Attorney At Law
225 – 106th Avenue N.E.
Bellevue, WA 98004
(425) 462-8240

## IV.  CLAIMS FOR RELIEF

4.1     Plaintiff re-alleges and incorporates the above statements and allegations.

4.2     At all material times, the vessel was in navigation, and plaintiff was acting in the course of his employment and service of the vessel as a seaman within the meaning of the general maritime law and Jones Act.  At the same time defendants were negligent and the vessel was unseaworthy.  The negligence of defendants and unseaworthiness of the vessel includes, without limitation: unsafe equipment, gear, materials or appliances; negligent assignment; under-manning, and overwork and unsafe method(s) of work. Specifically, without limitation, assigning plaintiff to work on a deck with unsecured gear in rough seas was patently both unseaworthy and negligent.

4.3     The injuries and impairment suffered by plaintiff were caused as a direct and proximate result and/or legal cause of the negligence of the defendants and the unseaworthiness of the vessel.

4.4     Plaintiff has suffered a loss of earning capacity, past and future, and has endured pain and suffering, both physical and mental in the past and will in the future.  He has incurred medical expenses and will in the future.  Plaintiff continues to undergo medical care and the full extent of his permanent injury, impairment and disability is yet to be determined.

4.5     Plaintiff is entitled and will remain entitled to future maintenance and cure due and owing under the general maritime law.

## **PRAYER**

(a)  Plaintiff prays for judgment for general and special damages against defendants;

(b)  For maintenance and cure in an amount to be proven at trial;

(c)  For reasonable attorney's fees and costs incurred, if any, to recover maintenance and cure;

(d)  Prejudgment and post-judgment interest;

(e)  For the costs of maintaining this suit;

SEAMAN'S COMPLAINT FOR DAMAGES - Page 6
(Tut Chany v. North Star Fishing Co., LLC et al.)

Anthony J. Ginster
Attorney At Law
225 – 106th Avenue N.E.
Bellevue, WA 98004
(425) 462-8240

(f) For reasonable attorney's fees and all costs;

(g) For an award to plaintiff of any other relief this court deems equitable and just;

(h) For the right to amend the Complaint to conform to the proof offered at trial.

> DATED this 26th day of October, 2023
>
> *s/ Anthony J. Ginster*
> _____
> ANTHONY J. GINSTER, WSBA # 19310
> ATTORNEY AT LAW
> 225 106TH AVENUE NE
> BELLEVUE, WA 98004
> TELEPHONE: (425) 462-8240
> FAX: (425) 462-9660
> E-MAIL: AGINSTER@MSN.COM

**VERIFICATION**

Anthony J. Ginster, pursuant to 28 U.S.C. sec. 1746, declare and states that I am the attorney for plaintiff and based on information supplied by plaintiff and my investigation of this matter, I believe the above-stated facts to be true.

DATED this 26th day of October, 2023

*s/ ANTHONY J. GINSTER*
_____
Anthony J. Ginster

SEAMAN'S COMPLAINT FOR DAMAGES - Page 7
(Tut Chany v. North Star Fishing Co., LLC et al.)

Anthony J. Ginster
Attorney At Law
225 – 106th Avenue N.E.
Bellevue, WA 98004
(425) 462-8240